TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00274-CV






Eric Eckardt, Appellant



v.



Dorsey Bryan Hardeman, Appellee






FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY


NO. 233,984, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING 






 Appellant Eric Eckardt, a Florida resident, appeals the trial court's denial of his
special appearance. (1) We will affirm.


FACTUAL AND PROCEDURAL BACKGROUND



 Because this appeal involves a challenge to a denial of a special appearance, only
a brief summary of the underlying facts is needed. Flight Source International, Inc. ("Flight
Source") is a corporation organized under Florida law engaged in brokering the sale of airplanes
in various states, including Texas. Eckardt and his wife are the sole owners and officers of the
corporation. Flight Source filed suit in Travis County, Texas against appellee Dorsey Bryan
Hardeman asserting breach of an exclusive brokerage agreement and seeking a commission for the
sale of an airplane owned by Hardeman. Hardeman counterclaimed against Flight Source and
brought Eckardt into the suit individually, alleging fraud, negligent misrepresentation, and breach
of contract related to the sale of a different airplane. Eckardt filed a special appearance contesting
jurisdiction over him personally, averring that he is not a resident of Texas and does not have the
necessary minimum contacts with Texas in his individual capacity to subject him to personal
jurisdiction in Texas. After an evidentiary hearing, the trial court denied the special appearance.

 Hardeman contends personal jurisdiction over Eckardt is proper because Eckardt
had sufficient contacts with Texas as an individual to establish either specific or general
jurisdiction over him personally; in the alternative, Hardeman asserts that Flight Source is the alter
ego of Eckardt and that the contacts with Texas on behalf of the sham corporation establish
jurisdiction over Eckardt personally. In his sole issue on appeal, Eckardt claims the trial court
erred in denying his special appearance because (1) he is a Florida resident and his only contacts
with Texas have been on behalf of a corporation, and (2) Flight Source is not the alter ego of
Eckardt and thus there can be no personal jurisdiction based on the theory of piercing the
corporate veil.


DISCUSSION



Standard of Review


 The proper standard for reviewing the evidence in a case involving a challenge to
in personam jurisdiction is factual sufficiency, not de novo review. See Fish v. Tandy Corp., 948
S.W.2d 886, 891 (Tex. App.--Fort Worth 1997, writ denied); Nikolai v. Strate, 922 S.W.2d 229,
236 (Tex. App.--Fort Worth 1996, writ denied); Hotel Partners v. KPMG Peat Marwick, 847
S.W.2d 630, 632 (Tex. App.--Dallas 1993, writ denied). Thus, we may reverse the trial court's
decision only if its ruling is so against the great weight and preponderance of the evidence as to
be manifestly erroneous or unjust. See Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re
King's Estate, 244 S.W.2d 660, 661 (Tex. 1951); see also Pool v. Ford Motor Co., 715 S.W.2d
629, 635 (Tex. 1986). In reviewing such a point of error, we must consider and weigh all of the
evidence, both the evidence that tends to prove the existence of a vital fact as well as evidence that
tends to disprove its existence. See id.

 A nonresident defendant challenging personal jurisdiction bears the burden of proof
to negate all bases of personal jurisdiction alleged by the plaintiff. Kawasaki Steel Corp. v.
Middleton, 699 S.W.2d 199, 203 (Tex. 1985). Because the trial court was not requested to make,
and did not make, findings of fact and conclusions of law relating to Eckardt's special appearance,
we must imply all necessary findings in support of the trial court's ruling, and we will affirm if
the judgment can be upheld on any legal theory that is supported by the evidence. See Nikolai,
922 S.W.2d at 240 (citing Clark v. Noyes, 871 S.W.2d 508, 511-12 (Tex. App.--Dallas 1994, no
writ)).


Constitutional Requirements for Asserting Personal Jurisdiction


 A Texas court may exercise personal jurisdiction over a nonresident if two
conditions are met: (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and
(2) the exercise of jurisdiction is consistent with the due process guarantees of the federal and state
constitutions. See Schlobohm v. Schapiro, 784 S.W.2d 355, 356 (Tex. 1990). The long-arm
statute extends personal jurisdiction to nonresident defendants doing business in Texas when the
business conducted by the nonresident in Texas is continuous and systematic, or when litigation
arises out of or is related to the business conducted by the nonresident defendant in Texas. See
Nikolai, 922 S.W.2d at 233; see also Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (West 1997)
(defining acts constituting "doing business" in Texas). When the cause of action itself arises out
of the nonresident defendant's contacts with the state, only specific jurisdiction may be imposed. 
See Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414 (1984). When the
nonresident defendant has continuous and systematic contacts with the state, general jurisdiction
may be imposed so that all matters before the court may be adjudicated. Id. at 414-16; Guardian
Royal Exch. Assurance, Ltd. v. English China Clays P.L.C., 815 S.W.2d 223, 227-28 (Tex.
1991).

 The Texas Supreme Court has held that the broad language of the "doing business"
requirement allows the long-arm statute to reach as far as the federal constitution permits. See
Guardian Royal, 815 S.W.2d at 226; Schlobohm, 784 S.W.2d at 357. The only limitations placed
on Texas courts in asserting personal jurisdiction over a nonresident defendant are those imposed
by the Due Process Clause of the Fourteenth Amendment. See Helicopteros, 466 U.S. at 413-14. 
Due process requires a showing that the nonresident defendant has purposefully established
"minimum contacts" with Texas and that the maintenance of the suit does not offend "traditional
notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310,
316 (1945); Guardian Royal, 815 S.W.2d at 230-31.

Minimum Contacts/Alter Ego


 Eckardt asserts that because his only contacts with Texas have been on behalf of
a corporation, he has not purposefully established the required "minimum contracts" with Texas
necessary for a Texas court to assert either specific or general jurisdiction over him in his
individual capacity. We agree that, as a general rule, an individual's contacts with the forum state
on behalf of a corporation do not create personal jurisdiction over the individual. See Braden v.
Marquez, 950 S.W.2d 191, 194 (Tex. App.--El Paso 1997, no writ); Vosko v. Chase Manhattan
Bank, N.A., 909 S.W.2d 95, 99 (Tex. App.--Houston [14th Dist.] 1995, writ denied); Leon Ltd.
v. Albuquerque Commons Partnership, 862 S.W.2d 693, 708 (Tex. App.--El Paso 1993, no writ).
However, as Eckardt acknowledges, an exception to this rule exists when the court disregards the
corporate fiction on a theory of alter ego. See id. Where a business is found to be the alter ego
of an individual, a Texas court may assert personal jurisdiction over the individual whose only
contacts with the state have been on behalf of the sham corporation. See id. Therefore, even
assuming Eckardt's only contacts with Texas have been on behalf of Flight Source, this Court may
uphold the trial court's denial of Eckardt's special appearance if we find that the record contains
sufficient evidence to support a finding that Flight Source is Eckardt's alter ego. (2)

 We are aware that Texas courts disregard the corporate entity and impose liability
on the controlling individuals only under extraordinary circumstances. See Castleberry v.
Branscum, 721 S.W.2d 270, 272 (Tex. 1986). Nevertheless, the corporate fiction will be
disregarded on the basis of alter ego when "there is such unity between corporation and individual
that the separateness of the corporation has ceased and holding only the corporation liable would
result in injustice." Id. Whether a corporation is merely the alter ego of an individual is
determined by 


the total dealings of the corporation and the individual, including the degree to
which corporate formalities have been followed and corporate and individual
property have been kept separately, the amount of financial interest, ownership and
control the individual maintains over the corporation, and whether the corporation
has been used for personal purposes.



Id.

 It is undisputed that Eckardt and his wife are the only shareholders of Flight Source
and the only persons with any financial interest in the company. Eckardt testified that he and his
wife are the only officers of Flight Source, and he assumes they are the directors as well. The
evidence shows that Eckardt and his wife have exclusive ownership and control over all facets of
the corporation. Notwithstanding this exclusive control over Flight Source, Eckardt testified that
he is not certain of what stock has been issued or whether any documentation exists reflecting
issuance of stock. Eckardt is aware that Flight Source is a Subchapter-S corporation, but he has
no understanding of what that means.

 There is also evidence that corporate and personal money were commingled. In
particular, Eckardt testified he made personal loans to the company, but is unable to recall when,
on how many occasions, or for how much. (3) Documentation regarding the lease of an automobile
by Flight Source indicates an allowance for a "trade-in" vehicle, but Eckardt does not recall if the
traded automobile was owned by Flight Source or by Eckardt or his wife. There is documentation
of continuous fund transfers between the Eckardts and Flight Source, with notations indicating the
Eckardts routinely transferred personal funds to Flight Source in the form of "loans" to meet
business expenses. There is also documentation of funds distributed to the Eckardts from Flight
Source without indication of the category of disbursement. These entries at least imply that
personal money was perpetually moving in and out of the Flight Source account. One Flight
Source ledger entry notes payment for babysitting services from the Flight Source checking
account.

 Finally, there is evidence that Flight Source was undercapitalized, raising an
inference that holding only the corporation liable would result in injustice. The evidence shows
that as of February 1998, the value of all Flight Source assets was approximately $3,200. Eckardt
testified that he is unable to estimate Flight Source's outstanding credit card balances, but knows
they are in the thousands. Bank balances indicate that for much of 1996 and 1997 Flight Source
maintained less than $1,000 in its checking account. Eckardt carries no insurance for Flight
Source. Assuming Hardeman obtained a judgment in the underlying suit, there is no indication
Flight Source would be able to satisfy the judgment, which would result in an injustice to
Hardeman. Cf. Braden, 950 S.W.2d at 195.

 We conclude that the trial court's implicit finding that Flight Source is Eckardt's
alter ego is not so contrary to the great weight and preponderance of the evidence as to be
manifestly unjust. The evidence is sufficient to support a finding of such a unity between Flight
Source and Eckardt that the corporation, in essence, did not exist and that holding only the
corporation liable would result in injustice. See Castleberry, 721 S.W.2d at 276. While we are
mindful that none of the factors set forth in Castleberry, standing alone, is sufficient to disregard
the corporate entity under a theory of alter ego, we believe that in this case there was sufficient
evidence of several of the factors. (4) Viewing the evidence of the dealings between Flight Source
and Eckardt as a whole, the evidence of alter ego was factually sufficient.

 Because we uphold the denial of Eckardt's special appearance on the theory of alter
ego, we need not determine whether Eckardt had sufficient minimum contacts with Texas in his
individual capacity to support personal jurisdiction over him individually.


Fair Play and Substantial Justice


 Having concluded that the trial court's exercise of personal jurisdiction over
Eckardt withstands the minimum contacts analysis via alter ego, we must next determine whether
this exercise of jurisdiction comports with fair play and substantial justice. See Asahi Metal Indus.
Co. v. Superior Court of California, 480 U.S. 102, 113-15 (1987); Burger King Corp. v.
Rudzewicz, 471 U.S. 462, 476 (1985); Nikolai, 922 S.W.2d at 235. Whether asserting personal
jurisdiction offends fair play and substantial justice is determined by evaluating the contacts in
light of the following factors: (1) the burden on the defendant; (2) the interest of the forum state
in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief;
(4) the interstate judicial system's interest in obtaining the most efficient resolution of
controversies; and (5) the shared interest of the several states in furthering fundamental substantive
social policies. See Burger King, 471 U.S. at 477.

 Eckardt argues that he would be "greatly" burdened by defending this lawsuit in
Texas. As support for this contention, Eckardt argues that it is "highly speculative" that
Hardeman will recover against him personally, and thus he should not be forced to defend himself
in a foreign state based on speculation and uncertainty. We fail to see how Eckardt will be
significantly burdened by defending himself individually in Texas. Flight Source initially filed
the underlying suit against Hardeman in Texas, and the record shows that Eckardt is already
appearing in Texas on behalf of Flight Source. Given that Eckardt will be present for the
adjudication of Flight Source's claims and Hardeman's counterclaims in Texas, we believe that
asserting jurisdiction over Eckardt in his individual capacity will, at most, impose a minimal
additional burden on Eckardt. (5)

 To the extent the other factors are relevant here, they likewise show no offense to
fair play or substantial justice. The State of Texas has an interest in protecting its citizens from
tortious conduct and breaches of contract, and it is certainly more convenient for Hardeman, as
counter-plaintiff, to have his counterclaim resolved in the same court in which he is already
defending himself against Flight Source's claims. Clearly the most efficient resolution of these
controversies is through a single trial that adjudicates all claims arising out of the same or a related
series of transactions.


CONCLUSION



 Having found the evidence factually sufficient to uphold the trial court's denial of
Eckardt's special appearance, we affirm the trial court's order.



 
 J. Woodfin Jones, Justice

Before Chief Justice Aboussie, Justices Jones and B. A. Smith

Affirmed

Filed: January 28, 1999

Do Not Publish
1. This Court has jurisdiction to hear this interlocutory appeal pursuant to section 51.014(a)(7)
of the Texas Civil Practice and Remedies Code. See Tex. Civ. Prac. & Rem. Code Ann.
§ 51.014(a)(7) (West Supp. 1999).
2. As previously noted, the trial court did not make findings fact or conclusions of law on
Eckardt's special appearance; therefore, we may affirm the judgment on any legal theory
supported by the evidence. See Nikolai, 922 S.W.2d at 240.
3. We do not intend to imply that making personal loans to one's company constitutes improper
commingling; however, where a party has no knowledge of any details regarding such loans, it
can at least be inferred that the party does not view the corporate and individual funds as separate.
4. Hardeman also presented evidence that Eckardt failed to follow corporate formalities. For
instance, Eckardt testified that there are no scheduled shareholders' meetings, that he had no
corporate minutes, and that he is "not quite sure" what corporate minutes are. However, we note
that in reaction to the Castleberry holding, article 2.21(A)(3) of the Texas Business Corporation
Act was substantially amended to eliminate the failure to observe corporate formalities as a factor
in establishing shareholder liability for "any obligation of the corporation." See Comments of the
Bar Committee-1996, art. 2.21 (West Supp. 1999). Assuming article 2.21(A)(3) applies to the
present case, there is sufficient evidence regarding the other Castleberry factors to support the
implied finding that Flight Source was the alter ego of Eckardt.
5. In fact, Eckardt conceded during oral argument before this Court that asserting jurisdiction
over him personally would not be burdensome.



d effective relief;
(4) the interstate judicial system's interest in obtaining the most efficient resolution of
controversies; and (5) the shared interest of the several states in furthering fundamental substantive
social policies. See Burger King, 471 U.S. at 477.

 Eckardt argues that he would be "greatly" burdened by defending this lawsuit in
Texas. As support for this contention, Eckardt argues that it is "highly speculative" that
Hardeman will recover against him personally, and thus he should not be forced to defend himself
in a foreign state based on speculation and uncertainty. We fail to see how Eckardt will be
significantly burdened by defending himself individually in Texas. Flight Source initially filed
the underlying suit against Hardeman in Texas, and the record shows that Eckardt is already
appearing in Texas on behalf of Flight Source. Given that Eckardt will be present for the
adjudication of Flight Source's claims and Hardeman's counterclaims in Texas, we believe that
asserting jurisdiction over Eckardt in his individual capacity will, at most, impose a minimal
additional burden on Eckardt. (5)

 To the extent the other factors are relevant here, they likewise show no offense to
fair play or substantial justice. The State of Texas has an interest in protecting its citizens from
tortious conduct and breaches of contract, and it is certainly more convenient for Hardeman, as
counter-plaintiff, to have his counterclaim resolved in the same court in which he is already
defending himself against Flight Source's claims. Clearly the most efficient resolution of these
controversies is through a single trial that adjudicates all claims arising out of the same or a related
series of transactions.


CONCLUSION



 Having found the evidence factually sufficient to uphold the trial court's denial of
Eckardt's special appearance, we affirm the trial court's order.



 
 J. Woodfin Jones, Justice

Before Chief Justice Aboussie, Justices Jones and B. A. Smith

Affirmed

Filed: January 28, 1999

Do Not Publish
1. This Court has jurisdiction to hear this interlocutory appeal pursuant to section 51.014(a)(7)
of the Texas Civil Practice and Remedies Code. See Tex. Civ. Prac. & Rem. Code Ann.
§ 51.014(a)(7) (West Supp. 1999).
2. As previously noted, the trial court did not make findings fact or conclusions of law on
Eckardt's special appearance; therefore, we may affirm the judgment on any legal theory
supported by the evidence. See Nikolai, 922 S.W.2d at 240.
3. We do not intend to imply that making personal loans to one's company constitutes imprope